UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| WILLIAM WORKMAN, | Case No. 3:17-cv-00508-MMD-CLB |
| Petitioner, | ORDER |
| v. | |
| ISIDRO BACA, *et al.*, | |
| Respondents. | |

**I.   SUMMARY**

Petitioner William Workman filed a petition for writ of *habeas corpus* under 28 U.S.C. § 2254 (ECF Nos. 13, 18 ("Petition")). This matter is before the Court for adjudication on the merits of the remaining grounds in the Petition. Additionally, before the Court is Petitioner's motion for resolution (ECF No. 52). For the reasons discussed below, the Court denies the Petition and denies Petitioner a certificate of appealability. The Court also denies Petitioner's motion for resolution as moot.

**II.   BACKGROUND**

Petitioner was charged with burglary for the events that occurred in Washoe County on October 13, 2009. (ECF No. 20-2.) Petitioner testified at trial that he was homeless and was seeking shelter from the rain and cold weather conditions.[1] (ECF No. 21-1 at 92, 95.) Petitioner entered a house by breaking through the basement window. (*Id.* at 94, 98.) After entering the house, Petitioner removed items of clothing wet from the rain and hung the clothing up to dry. (*Id.* at 94.) Petitioner put plasterboard in place of the broken window. (*Id.* at 94-95.)

---

[1]The Court makes no credibility findings or other factual findings regarding the truth or falsity of evidence or statements of fact in the state court. The Court summarizes statements solely as background to the issues presented in the case, and it does not summarize all such material. No statement of fact made in describing statements, testimony, or other evidence in the state court constitutes a finding by the Court.

The owner of the house resided in a cottage located behind the house in the same lot. (*Id.* at 8.) The owner was renovating the house and used it as storage for construction materials, including the following: copper wire, stacks of drywall, outlet, motorcycles and motorcycle parts, two player pianos, and appliances, such as washing machines, stoves, and hot water heaters. (*Id.* at 11-13.) Upon returning to the house, the owner noticed a light turned on in the northeast corner bedroom. (*Id.* at 21.) The bedroom contained beds and a box spring mattress. (*Id.* at 19.) While observing the house, the owner saw the light turn off in the northeast corner bedroom and then saw a light turn on in another bedroom. (*Id.* at 22.) The owner returned to his cottage and dialed 911. (*Id.* at 25.) While calling the police, the owner observed the silhouette of a man peek out of the back door of the house, look around, and return inside. (*Id.* at 25-26.) Once the man returned inside, the lights continued to turn on and off from room to room. (*Id.* at 26.)

Police officers arrived and set up a perimeter around the house. (*Id.* at 44.) An officer positioned at the front of the house testified that he observed an individual look out of a bedroom window by parting curtains. (*Id.* at 45.) The officer's squad car was parked within view. (*Id.* at 46.) Another officer positioned at the back of the house testified that he observed Petitioner exit the house from the backdoor and the officer instructed Petitioner at gunpoint to approach. (*Id.* at 58.) The officer testified that Petitioner stated that "[he] didn't just come from that house. [He] was sleeping behind a dumpster." (*Id.* at 59.) Petitioner did not remove any items from the house, and nothing was disturbed in the house other than the broken window. (*Id.* at 127.)

A detective with the Reno Police Department's Burglary Section testified at trial as follows. (*Id.* at 73-74.) The house contained items of value, such as copper wire, engines, and tools, that were commonly stolen. *(Id.* at 78.) Items like the copper wire could be sold to a recycling area and there was a recycling area located one block from the house. (*Id.*) Tools could also be sold to a pawn shop for a nominal fee. (*Id.*)

Petitioner testified at trial, *inter alia*, as follows. Petitioner was homeless, staying in a dirt lot that did not provide adequate shelter from the rain, and was soaking wet from

2

the rain. (*Id.* at 92, 100.) Petitioner could not live at the homeless shelter and did not seek shelter at a casino as he would have been asked to leave. (*Id.* at 99-100, 109.) Petitioner was informed by acquaintances that there were houses other homeless individuals stayed in. (*Id.* at 94.) Petitioner was looking for a place to lie down and believed he found his "winter home" when he encountered the house. (*Id.* at 95.) Petitioner had experience recycling plastic bottles and aluminum cans but did not recycle copper wire. (*Id.* at 108.)

When Petitioner was arrested for entering the house, he had in his possession a motel room key. (*Id.* at 104.) Petitioner's acquaintance was staying in the motel room and the State asserted Petitioner was previously staying in the motel room with his acquaintance. (*Id.* at 103-04.) At trial, Petitioner testified he did not seek shelter at the motel room occupied by his acquaintance because the acquaintance was "very violent" and a "stalker." (*Id.* at 105.)

Following a jury trial, Petitioner was found guilty of burglary, which is a felony. (ECF No. 21-2.) Petitioner had prior felony convictions and the State sought habitual criminal status at sentencing. (ECF No. 21-7 at 4.) The state district court made a finding of habitual criminal status and sentenced Petitioner to a term of life imprisonment with the possibility of parole eligibility after a minimum of 10 years has been served. (ECF No. 21-10.) Petitioner appealed and challenged a jury instruction regarding the inference of burglarious intent based on an unlawful breaking and entering, as well as on the basis that there was insufficient evidence to support a burglary conviction. (ECF No. 22-5.) The Nevada Supreme Court affirmed the judgment of conviction. (ECF No. 22-12.)

Petitioner filed a *pro se* state habeas petition on June 21, 2011. (ECF No. 22-18.) The state district court appointed counsel, who filed a supplemental petition on February 27, 2014. (ECF No. 22-43.) After an evidentiary hearing, the court denied the petition on August 27, 2015. (ECF No. 23-2.) The Nevada Court of Appeals affirmed the denial of the petition on February 23, 2017. (ECF No. 26-4.) Remittitur issued on March 31, 2017. (ECF No. 26-9.)

///

Petitioner's federal *pro se* habeas petition was dispatched on August 24, 2017 and filed on April 6, 2018. (ECF Nos. 1, 13.) Petitioner filed a motion to amend the Petition and set forth additional claims within the motion, which the Court granted. (ECF Nos. 18, 36.) The Petition is, therefore, comprised of two filings at ECF No. 13 and ECF No. 18. Respondents moved to dismiss the amended petition and the Court granted, in part, finding Grounds 2, 3, and 4 untimely, and denied, in part, finding Ground 1(c) as being exhausted. (ECF Nos. 40, 41.)

In Petitioner's remaining ground for relief, which contains three subparts, Petitioner alleges the following instances of ineffective assistance of counsel in violation of his federal constitutional rights:

Ground 1(a): counsel failed to conduct pretrial investigation;

Ground 1(b): counsel failed to call certain witnesses in support of Petitioner's defense; and

Ground 1(c): counsel failed to present evidence that Petitioner required shelter as a result of his illness. (ECF No. 13 at 3-4.)[2]

## III.  LEGAL STANDARD

### A.  Review under the Antiterrorism and Effective Death Penalty Act

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in *habeas corpus* cases under the Antiterrorism and Effective Death Penalty Act (AEDPA):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[2]Petitioner set forth these claims as a single ground. Respondents re-numbered the claims as Grounds 1-3. The Court, however, views this as a single ground with three subparts. Therefore, the original Petition sets forth Grounds 1(a)-(c), and the Court refers to the supplemental grounds as Grounds 2-4.

28 U.S.C. § 2254(d). A state court decision is contrary to established Supreme Court precedent, within the meaning of § 2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of established Supreme Court precedent under § 2254(d)(1), "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (internal citation omitted) (quoting *Williams*, 529 U.S. at 409-10).

The Supreme Court has instructed that a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Court has stated that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted) (describing the standard as "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt").

### B. Standard for evaluating an Ineffective-Assistance-of-Counsel claim

In *Strickland*, the Supreme Court propounded a two-prong test for analysis of ineffective-assistance-of-counsel claims requiring Petitioner to demonstrate that: (1) the counsel's "representation fell below an objective standard of reasonableness[;]" and (2)

the counsel's deficient performance prejudices Petitioner such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Courts considering an ineffective-assistance-of-counsel claim must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The burden is on Petitioner to show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for Petitioner to "show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, errors must be "so serious as to deprive [Petitioner] of a fair trial, a trial whose result is reliable." *Id.* at 687.

Where a state district court previously adjudicated the ineffective-assistance-of-counsel claim under *Strickland*, establishing that the court's decision was unreasonable is especially difficult. *See Harrington*, 562 U.S. at 104-05. In *Harrington*, the Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *See id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted) ("When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as doubly deferential."). The Court further clarified, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

## IV.  DISCUSSION

### A.  Grounds 1(a) and 1(b)

The Court will discuss Grounds 1(a) and 1(b) collectively wherein Petitioner asserts he received ineffective assistance of counsel due to his trial counsel's failure to investigate and failure to call certain witnesses in support of Petitioner's defense.

Petitioner alleges that his intent to seek shelter was not investigated, factually developed, or brought to the jury's attention. (ECF No. 13 at 4.) Petitioner further asserts that "a little more evidence may have tipped the scales of justice," as the state district court judge remarked that the jury could have gone either way in view of the evidence. (*Id.* at 3.)

In Petitioner's state habeas appeal, the Nevada Court of Appeals held:

> Workman argues his trial counsel was ineffective for failing to investigate Workman's living conditions and lack of shelter options. Workman asserted counsel could have discovered and presented evidence and testimony at trial to support his defense that he entered the home merely to find shelter, and not with the intent to commit larceny. Workman failed to demonstrate his counsel's performance was deficient or resulting prejudice.
>
> "Where counsel and the client in a criminal case clearly understand the evidence and the permutations of proof and outcome, counsel is not required to unnecessarily exhaust all available public or private resources." *Molina v. State*, 120 Nev. 185, 192, 87 P.3d 533, 538 (2004). At the evidentiary hearing, Workman's trial counsel testified she had an investigator who worked on this case and she obtained what she believed to be the necessary photographs from the State. Counsel testified her investigator attempted to locate one of the witnesses Workman asserts would have provided favorable testimony, but her recollection was that her investigator was unable to find the witness. Counsel further testified he believed she had obtained sufficient evidence to present Workman's defense, Workman's own version of events was plausible, and the facts of this case spoke for themselves. Tactical decisions made by counsel, such as which witnesses to interview or investigate, "are virtually unchallengeable absent extraordinary circumstances," *Ford v. State*, 105 Nev. 850, 853, 784 P.2d 951, 953 (1989), and Workman fails to demonstrate counsel's investigative decisions amounted to objectively unreasonable decisions.
>
> Moreover, the majority of the information Workman asserted counsel should have attempted to discover was duplicative of information he provided the jury during his own trial testimony. Under these circumstances, Workman failed to demonstrate a reasonable probability of a different outcome at trial had counsel attempted to discover additional similar information and then presented it at trial. Therefore, we conclude the district court did not err in denying this claim.

(ECF No. 26-4 at 3-4.)

The Nevada Court of Appeals' rejection of this claim was neither contrary to nor an unreasonable application of *Strickland*.

Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. In an ineffectiveness-of-counsel case, "a particular decision not to investigate

7

must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* In assessing counsel's investigation, the Court must conduct an objective review of counsel's performance, measured for "reasonableness under prevailing professional norms." *Id.* at 688. This includes a context-dependent consideration of the challenged conduct as seen "from counsel's perspective at the time." *Id.* at 689. *See Wiggins v. Smith*, 539 U.S. 510, 523 (2003). Furthermore, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland,* 466 U.S. at 690.

Petitioner's assertions that his intent to seek shelter was not investigated, factually developed, or presented to the jury are belied by the record. At Petitioner's post-conviction evidentiary hearing, Petitioner's trial counsel testified that the theory of the defense was that Petitioner entered the house but did not have the intent to commit larceny. (ECF No. 22-54 at 70.) Counsel communicated with Petitioner and discussed the discovery with him. (*Id.* at 58-59.) Counsel had an investigator working on the case. (*Id.* at 67.) Counsel believed the investigator visited the house, but the State provided photographs that fulfilled the defense's needs. (*Id.* at 79.) Counsel further testified that she did not know if a photograph of the bed Petitioner was lying on in the house would have helped the case as the evidence was clear nobody was residing in the house; Petitioner hung up his clothing in the house; it was raining outside; and Petitioner did not take any items from the house. (*Id.* at 67.) Counsel thought the evidence spoke for itself and that Petitioner's story was believable. (*Id.*) Petitioner testified at trial that he was homeless, staying in a dirt lot that did not provide adequate shelter from the rain, and was soaking wet from the rain. (ECF No. 21-1 at 92, 100.) Petitioner was looking for a place to lie down and get dry when he encountered the house. (*Id.* at 94-95.) Petitioner believed he found his "winter home." (*Id.* at 95.)

Turning to Ground 1(b) regarding trial counsel's failure to call witnesses in support of Petitioner's defense. The Nevada Court of Appeals' order of affirmance provided that "[c]ounsel testified her investigator attempted to locate one of the witnesses [Petitioner]

asserts would have provided favorable testimony, but [counsel's] recollection was that her investigator was unable to find that witness." (ECF No. 26-4 at 3.) At trial, Petitioner testified that he did not seek shelter at the motel room occupied by his acquaintance because the acquaintance was "very violent." (ECF No. 21-1 at 105.) At Petitioner's post-conviction evidentiary hearing, Petitioner's trial counsel recalled that her investigator tried to locate the witness but was unable to find the witness. (ECF No. 22-54 at 71-72.)

The Court of Appeals reasonably determined that Petitioner failed to demonstrate his trial counsel's investigative decisions and failure to call witnesses in support of Petitioner's defense were objectively unreasonable. Counsel testified that she believed Petitioner's story was plausible, that counsel obtained sufficient evidence to support Petitioner's defense, and that the facts spoke for themselves. (ECF No. 26-4 at 3.) Counsel had an investigator on the case. (ECF No. 22-54 at 67). Counsel presented testimony that Petitioner entered the house with the intent to seek shelter and not the intent to commit larceny. Counsel elicited testimony that Petitioner did not recycle copper wire. (ECF No. 21-1 at 108.) Counsel further testified that her investigator attempted to locate the witness that occupied the motel room. (ECF No. 22-54 at 71-72.) The witness, however, was unable to be found. (*Id.*) For all these reasons, it was reasonable to find Petitioner had not shown his counsel was deficient. Therefore, the Court of Appeals reasonably determined Petitioner did not demonstrate his counsel fell below an objective standard of reasonableness in accordance with the first prong of *Strickland.*

To prevail on the ineffective-assistance-of-counsel claim, Petitioner must show his trial counsel acted deficiently and "a reasonable probability that, but for counsel's [deficiencies], the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. However, the Court need not "address both components of the inquiry" if Petitioner "makes an insufficient showing on one." *Id.* at 697. Although the Court of Appeals held Petitioner failed to demonstrate both deficiency and resulting prejudice, Petitioner has not sufficiently demonstrated here his counsel's "representation fell below

///

9

an objective standard of reasonableness." *Id.* Therefore, the *Strickland* inquiry need not continue, and Petitioner is denied federal habeas relief for Grounds 1(a) and 1(b).

**B. Ground 1(c)**

Petitioner also alleges that he was denied effective assistance of counsel because of trial counsel's failure to present evidence that Petitioner required shelter as a result of his illness. (ECF No. 13 at 4.) The Petition states, "[t]he record in this matter is replete that [Petitioner] was a sick, wet, cold, homeless man seeking shelter from a storm, and not a burglar." (*Id.* at 3-4.) Petitioner further alleges that once he was arrested and in custody, Petitioner was immediately placed in quarantine for several days out of fear that his virus or infection would spread. (*Id.* at 4.) Petitioner sought shelter out of desperation resulting from his illness and that "[t]hese facts were never investigated and presented to [Petitioner's] jury." (*Id.*)

Although the Court initially found Ground 1(c) was exhausted in the May 24, 2019 order resolving Respondents' motion to dismiss (ECF No. 41), the Nevada Court of Appeals declined to consider the issue in the first instance (ECF No. 26-4 at 6-7). In Petitioner's state habeas appeal, the Court of Appeals held:

> Workman argues counsel should have presented evidence to demonstrate Workman needed to find shelter due to an illness, prepared him to testify at trial, and properly question the State's expert regarding burglary. Workman also asserts cumulative errors of counsel amount to ineffective assistance of counsel. Workman did not raise these issues in his petition and the district court did not allow Workman to raise new claims at the evidentiary hearing. *See Barnhart v. State*, 122 Nev. 301, 303-04, 130 P.3d 650, 652 (2006). Therefore, these claims are not properly raised on appeal and we decline to consider them in the first instance. *See McNelton v. State*, 115 Nev. 396, 416. 990 P.2d 1263, 1276 (1999).

(*Id.*)

To the extent that Petitioner did not previously present the claim in his first habeas petition and supplemental petition (ECF Nos. 22-18, 22-43), the claim was presented in a procedural context in which the merits would not be considered absent special circumstances. At Petitioner's post-conviction evidentiary hearing, Petitioner testified that he was ill on the day he entered the house. (ECF No. 22-54 at 17.) Although Petitioner's trial counsel also testified that she did not recall discussing Petitioner's alleged illness and

did not believe she checked jail records to see if Petitioner was quarantined after his arrest, counsel testified that she believed she had presented sufficient evidence to present Petitioner's defense that he entered the house with the intent to seek shelter. (*Id.* at 67-68, 79.) Counsel also believed Petitioner's own version of events plausible and that the facts spoke for themselves. (*Id.* at 67.) "There is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'" *Harrington*, 562 U.S. at 109 (quoting *Yarborough v. Gentry,* 540 U.S. 1 (2003)). Furthermore, the Nevada Court of Appeals reasonably determined that Petitioner failed to demonstrate his counsel was deficient in discovering or presenting evidence at trial to support his defense. (ECF No. 26-4 at 3.) Even if Petitioner properly presented his ineffective-assistance claim for failing to present evidence of his illness, the Court of Appeals would have reached the same result denying relief.

Petitioner, however, conceded that he raised the fact he was ill on the day he entered the house for the first time during the post-conviction evidentiary hearing. (ECF No. 22-54 at 17.) The state district court did not address the issue in its order denying his petition. (ECF No. 23-2.) In its order of affirmance, the Nevada Court of Appeals cited *Barnhart*, which provides that if a district court finds good cause to allow a petitioner to raise new issues at an evidentiary hearing, "the district court should do so explicitly on the record, enumerating the additional issues which are to be considered," and "should not resolve those issues without allowing the State the opportunity to respond." *Barnhart v. State*, 122 Nev. 301, 303, 130 P.3d 650, 652 (2006). The Court of Appeals determined that the district court did not allow Petitioner to raise new claims at the evidentiary hearing. (ECF No. 26-4 at 7.) Exhaustion may not be effectuated through a procedurally defective means. *See Castille v. Peoples*, 489 U.S. 346, 351 (1989). A claim is not fairly presented unless Petitioner follows the state procedural law to raise his claim in an appropriate manner. *Id.* Therefore, Petitioner failed to present the claim contained in his opening brief

///

///

(ECF No. 23-38), to the extent the claim was not previously presented in the first state habeas petition. Ground 1(c) is unexhausted and denied federal habeas relief as such.[3]

## V. CONCLUSION

It is therefore ordered that the petition for writ of *habeas corpus* (ECF Nos. 13, 18) is denied.

It is further ordered that a certificate of appealability is denied, as jurists of reason would not find either the procedural holding as to Ground 1(c) or the dismissal herein of Grounds 1(a) and 1(b) on the merits to be debatable or wrong, for the reasons assigned herein.

It is further ordered that Petitioner's motion for resolution (ECF No. 52) is denied as moot.

The Clerk of Court is directed to enter judgment accordingly.

DATED THIS 28th Day of September 2020.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE

---

[3]Respondents filed a motion to dismiss Ground 1(c) as unexhausted (ECF No. 40), which the Court denied, in part, in regard to Respondents' request for relief for Ground 1(c). Petitioner had the opportunity to respond to the exhaustion issue at such time. The Court now modifies its order denying, in part, Respondents' motion to dismiss regarding the exhaustion issue for Ground 1(c) as stated herein. *See City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (emphasis in original) ("As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, *rescind*, or modify an interlocutory order for cause seen by it to be sufficient.").